IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MISAEL MEDERO-GARCIA, et als.

Plaintiffs

v.

COMMONWEALTH OF PUERTO RICO, POLICE SUPERINTENDENT PEDRO TOLEDO, et als.

Defendants

Civil No. 08-1446(SEC)

**OPINION AND ORDER**

Pending before the Court are Co-defendants Pedro Toledo ("Toledo"), Leonardo Vázquez-Martínez ("Vázquez-Martínez"), Javier Avilés ("Avilés"), and Samuel Galloza's ("Galloza") motions to dismiss (Docket ## 9 & 21) and Plaintiffs' opposition thereto (Docket # 17). After reviewing the filings, and the applicable law, Co-defendant Toledo's motion to dismiss is **GRANTED**, while the remaining Co-defendants' motion is **GRANTED in part and DENIED in part.**

**Factual and Procedural Background**

Plaintiffs' filed the above captioned complaint seeking redress for the damages suffered by Misael Medero-García ("Misael"), as a result of the alleged excessive force employed by Galloza, Vázquez-Martínez, and Avilés, police officers with the Puerto Rico Police Department, during Misael's alleged detention and unlawful arrest. The complaint is premised on 42 U.S.C. § 1983, and Article 1802 of the Puerto Rico Civil Code. P.R. LAWS ANN. tit. 31, § 5141 (1956). Misael's co-plaintiffs are his father, César Medero-Ponce, his mother, Joanne García-Martínez, and his sister, Eunice Medero-García (a minor at the time the events unfolded,) who seek relief for emotional damages. Plaintiffs

**CIVIL NO. 08-1446 (SEC)**                                                                                              **Page 2**

sued Toledo, the Police Department Superintendent, and the following officers: Galloza, Vázquez-Martínez, and Avilés. Plaintiffs allege that Toledo is liable for their damages because he failed to institute adequate training and supervising policies to prevent events like those alleged within the Complaint.

The appearing Defendants, Toledo, Galloza, Vázquez-Martínez, and Avilés move to dismiss the complaint as to them on the following grounds: (1) that Eleventh Amendment Immunity bars any claims against Defendants in their official capacities; (2) Plaintiffs' fail to state a cause of action under 42 U.S.C. § 1983, specifically under the First, Fourth, Fifth, Tenth and Fourteenth Amendments of the United States Constitution; (3) César Medero-Ponce, Joanne García-Martínez, and Eunice Medero-García do not have standing to sue under 42 U.S.C. § 1983 since these plaintiffs cannot ground their claims on the alleged violation of their own civil rights; (4) Defendants are entitled to qualified immunity; (5) and Plaintiffs' supplemental jurisdiction claims should be dismissed.[1] Defendant Toledo additionally argues that he is not liable under the doctrine of Supervisory Liability. This Court will discuss the merits of these arguments, as they relate to each Defendant, below.

Because the pending motions are motions to dismiss, this Court takes as true all well pleaded facts contained in the complaint, and draws all reasonable inferences in Plaintiffs' favor. This Court shall start with a brief recount of the facts as they are set forth in the Complaint.

On April 15, 2007, Misael was driving his father's car with two friends when he was asked by police Defendants Galloza, Vázquez-Martínez, and Avilés to stop his car. Defendant Vázquez-Martínez informed Misael that he was stopped for not having his seat

---

[1] See Docket # 21, Motion to Partially Join and/or Adopt Motion to Dismiss Filed on November 28, 2008.

**CIVIL NO. 08-1446 (SEC)**                                                                                          Page 3

belt on. Plaintiff responded that Vázquez-Martínez was wrong. The officer then proceeded to instruct Misael and the other two passengers to exit the car, while Galloza allegedly pointed a shotgun at them. Once outside and after Misael showed his driver's license and car registration, Vázquez-Martínez announced that he was going to search the vehicle, an action that provoked Misael's protest alleging that it could not be performed without probable cause or a search warrant. Galloza allegedly proceeded to punch Misael on the back causing him to fall on top of the trunk, and then applied crushing force against his head and chest. This behavior on behalf of Galloza continued while Vázquez-Martínez conducted a search of the vehicle. No drugs, contraband, or any illegal material were found. This first episode finished with Vázquez-Martínez issuing a fine to Misael for not wearing the seat belt.

A second episode occurred minutes afterwards, when a nervous Misael ran a red light trying to outrun the Defendants' patrol, which continued to follow him. The patrol finally intercepted Misael's car, the Defendant officers stopped him yet again, violently took him out of the car, threw him against the pavement, and handcuffed him behind the back. Other police officers arrived at the scene while Misael was being punched and kicked persistently by Galloza, Vázquez-Martínez and Avilés, along with two other police officers, John Doe 1, and John Doe 2. At some point, Galloza punched Misael so hard in the chest that he lost his air and almost passed out. None of the other police officers that arrived at the scene did anything to stop the aggression towards Misael.

A third and last episode unfolded at the Barceloneta police station where Misael was brought by the Defendants and where he complained of the pain and injuries caused by the officers' aggression. Plaintiff did not receive any first aid or medical attention and was never informed of his Miranda rights. When Misael's father, César Medero-Ponce, arrived at the station he was appalled by the condition in which he found his son. Medero-

**CIVIL NO. 08-1446 (SEC)**                                                                    **Page 4**

Ponce was not afforded an official police explanation of what had happened. He alleges to have only received a stiff response: that the arresting and assaulting police officers were gone.

**Standard of Review**

Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[2] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the Plaintiffs' favor. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v.

---

[2] FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

**CIVIL NO. 08-1446 (SEC)**                                                                                         Page 5

Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).  Thus, Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-1950 (2009) (stating that the doctrine that a court must be compelled to accept as true all of the allegation contained in a complaint "is inapplicable to legal conclusions").

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).  Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,'but it asks for more than a sheer possibility that a defendant has acted unlawfully." Twombly, 127 S. Ct. at 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965.  That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

**Applicable Law and Analysis**

Pedro Toledo, Head of the Puerto Rico Police Department

Plaintiffs brought Toledo as a Co-defendant in this case, alleging that, as a supervisor, his "policies and policy decisions have resulted in totally inadequate selection and training for police officers. The supervision and supervisory policies of police officers

**CIVIL NO. 08-1446 (SEC)**                                                                                                   **Page 6**

fail to detect or punish incidents of unwarranted physical violence against citizens." See Docket # 6, ¶ 3.1. Furthermore, Plaintiffs allege that Toledo "knew or should have known of the aggressive behavior and propensity for violence of Defendants Samuel Galloza, Leonardo Vázquez-Martínez and Javier Avilés, [...] and turned a blind eye to these problematic rogue police officers in failing to properly supervise then and take remedial action against them." See Docket # 6, ¶ 4.4. The complaint additionally contends that Toledo's failure to properly take remedial actions as to the other Co-defendants constituted "a reckless or callous indifference to the constitutional rights of Plaintiffs." See Docket # 6, ¶ 4.4.

However, Plaintiffs' complaint lacks specificity as to Toledo's participation in the violation of Misael's constitutional rights to be free from police brutality. Toledo has moved to dismiss all claims on the following grounds: (1) Co-plaintiffs other than Misael lack standing to sue under 42 U.S.C. § 1983; (2) there is no supervisory liability pursuant to that section; (3) Toledo is entitled to qualified immunity; and (4) the pendent state law claims must be dismissed.

In order for a plaintiff to have a viable claim under § 1983, he must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the Plaintiffs of their rights, privileges, or immunities secured by the Constitution or laws of the United States. See Gutiérrez v. Cartagena, 882 F. 2d 553, 559 (1st Cir. 1989). The second prong of the inquiry is two-folded: (1) there must be an actual deprivation of a federally protected right, and (2) the conduct complained of must have been causally connected to the deprivation. Id.

The first element (acting under color of state law) has not been disputed by the Co-defendant, and it is apparent from the complaint that all the appearing Defendants were acting under color of state law. However, Plaintiffs' claims against Toledo fail to

**CIVIL NO. 08-1446 (SEC)**                                                                                   **Page 7**

overcome various hurdles. First, as Toledo correctly notes, Plaintiffs other than Misael have no viable claim under §1983, as they do not claim that their constitutional rights were violated, but only that they have suffered damages for the violation of Misael's constitutional rights. Although this Court understands that Co-plaintiffs César Medero-Ponce, Joanne García-Martínez and minor Eunice Medero-García may have suffered significant mental anguish as a result of Misael's injuries, these damages were not caused by a deprivation of their own constitutional rights. See Soto v. Flores, 103 F. 3d 1056, (1st Cir. 1997) (stating that although plaintiff suffered mental anguish as a result of her son's death, which was caused by Defendants' violation of the deceased's constitutional rights, "[t]he question is not one of a degree of suffering, but whether the plaintiff can establish a violation of a federal right[; w]hile [plaintiff's] loss was of enormous, heartbreaking magnitude, the Constitution does not protect against all harms. She herself was not deprived of a constitutionally protected interest, and she may not bring a §1983 due process claim [...]"). As such, Co-plaintiffs César Medero-Ponce, Joanne García-Martínez, and Eunice Medero-García's claims under §1983 are hereby **DISMISSED with prejudice.**

Misael's claims against Toledo, albeit for different reasons, necessarily suffer the same fate. The law in this Circuit is clear that a superior officer, such as Toledo, "cannot be held vicariously liable under [section 1983] on a respondeat superior theory." Maldonado v. Castillo, 23 F. 3d 576, 581(1st Cir. 1994). A supervisor can only be held liable for his own acts or omissions. Id. That is, in order for supervisory liability to attach, a plaintiff must allege that the supervisor's behavior demonstrates deliberate indifference in order to disregard his constitutional rights and that this conduct was affirmatively linked to the subordinate's illegal act or omission. Id. at 582. In other words, there must be an element of deliberate indifference and one of causation. The "causation

**CIVIL NO. 08-1446 (SEC)**                                                                                                    **Page 8**

requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights [...] if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct." Id. The necessary nexus may also be found if "there exists a widespread abuse sufficient to alert a supervisor to ongoing violations[, to the extent that] the supervisory is on notice and fails to take corrective action, say, by better training or closer oversight." Id. Furthermore, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Id.

Finally, in order to find that a supervisor showed deliberate indifference, there must be an allegation of: (1) a grave risk of harm, (2) the supervisor's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk. Robles v. Hoyos, 151 F. 3d 1, 7(1st Cir. 1998). In other words, it is "required that the supervisor had 'overtly or tacitly approved of, or purposely disregarded the conduct." Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204, 211(D.P.R. 2001) (citing, Lipsett v. University of Puerto Rico, 864 F. 2d 881, 902-903 (1st Cir. 1988)). In this regard,

> an important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned [...] or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens. Rodríguez-Vázquez, 160 F. Supp. 2d at 211.

Misael's complaint is completely devoid of allegations from which the Court could infer that Toledo was on notice of the officers' violent and illegal conduct, that this conduct created a grave risk of harm for citizens, and that, even then, Toledo failed to take measures to address the risk. The only allegations made against Toledo are conclusive in nature, i.e., that he failed to create a policy for procedures and operations that was consistent with the constitutional rights of Plaintiffs, and/or that he failed to train the officers, and/or that he failed to supervise them to ensure compliance with the policy. This

**CIVIL NO. 08-1446 (SEC)**                                                                                   **Page 9**

Court concludes, as we have in similar cases, that Misael's "factual allegations are poor and insufficient to establish all the elements of his claim against Toledo." Rodríguez-Vázquez, 160 F. Supp. 2d at 212. The lack of specific allegations that link Toledo to the officers' malfeasance impede us from concluding that his conduct showed deliberate indifference for Misael's constitutional rights, as it is required to hold Toledo liable under §1983. In light of the above, Misael's § 1983 claims against Toledo are hereby **DISMISSED with prejudice.**

Because the remaining claims against Toledo, to wit, those under Article 1802 of the Puerto Rico Civil Code, were brought pursuant to supplemental jurisdiction, having dismissed all federal claims against him, the Court will also dismiss the pendent state law claims. Exercising jurisdiction over pendent state law claims once the federal law claims are dismissed is discretional. See Newman v. Burgin, 930 F. 2d 955, 963-964 (1st Cir. 1991) (holding that "the power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit...[and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity"). As such, all state law claims against Toledo are **DISMISSED without prejudice.** Because this Court has dismissed all claims against Toledo, it needs not address his arguments regarding qualified immunity.

Officers Leonardo Vázquez-Martínez, Javier Avilés, and Samuel Galloza

Plaintiffs also aver that Defendants Vázquez-Martínez, Avilés and Galloza, are liable under §1983. Plaintiffs allege that Defendants were present at the time of Misael's arrest, at which point all three used excessive force (i.e. violently taking him out of the car, throwing him against the trunk to handcuff him and repeatedly beating him), and none of them did nothing to stop this conduct.

**CIVIL NO. 08-1446 (SEC)**                                                                 Page 10

Defendants raise five arguments in support of their motion to dismiss: (1) that Eleventh Amendment Immunity bars any claims against Defendants in their official capacities; (2) Plaintiffs fail to state a cause of action under 42 U.S.C. § 1983, specifically under the First, Fifth, Ninth, Tenth and Fourteenth Amendments of the United States Constitution; (3) César Medero-Ponce, Joanne García-Martínez, and Eunice Medero-García do not have standing to sue under 42 U.S.C. § 1983, since these Plaintiffs cannot ground their claims on alleged violation of their own civil rights; (4) Defendants are entitled to qualified immunity; (5) and Plaintiffs' supplemental claims should be dismissed. See Docket # 21, p. 2.

As discussed in the above section, claim (3) has been already dismissed and claim (2) will be discussed in the following sections. We now turn to Defendants' claims (1), (4), and (5).

Defendants posit that the claims against them in their official capacities should be dismissed, because the Police Department, as a Commonwealth agency, is entitled to Eleventh Amendment Immunity. This Amendment provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. C**ONST**. amend. XI.[3]

Although the Eleventh Amendment seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. See Board of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 362 (2001); see also Kimel v. Fla. Bd. of Regents, 528 U.S.

---

[3]The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743 (2002)).

**CIVIL NO. 08-1446 (SEC)**                                                                                   Page 11

62, 72-73 (2000); Hans v. Louisiana, 134 U.S. 1, 15 (1890). Although the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. See Jusino-Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Ortiz Feliciano v. Toledo-Dávila, 175 F.3d 37, 39 (1st Cir. 1999); Futura Development v. Estado Libre Asociado, 144 F.3d 7,12-13 (1st Cir. 1998); Ramírez v. Puerto Rico Fire Servs., 715 F.2d 694, 697 (1st Cir. 1984).

However, Eleventh Amendment immunity is not absolute and may be waived by the state or "stripped away" by Congress. Metcalf & Eddy v. P.R.A.S.A., 991 F.2d 935, 938 (1st Cir. 1993). There are four (4) circumstances in which the Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (3) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers"); and (4) when, provided that circumstances allow, other constitutional imperatives take precedence over the Eleventh Amendment's protection. Id. at 938 (citations omitted). Despite number two above, the First Circuit has held that the fact that a state has waived its immunity to be sued does not automatically means that it waived its immunity in federal court. See Díaz-Fonseca v.Commonwealth of Puerto Rico, 451 F. 3d 13, 33 (1st Cir. 2006) (holding that although the Commonwealth waived its immunity to be sued in certain circumstances in its own courts, it did not waive its immunity to be sued in federal court).

The Eleventh Amendment bar extends to governmental instrumentalities which are an arm or "alter ego" of the State. See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Ochoa Realty Corp. v. Faría, 618 F. Supp. 434, 435 (D.P.R. 1985); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280-281 (1977); Ursulich v. P.R. Nat'l Guard, 384 F. Supp. 736, 737-38 (D.P.R. 1974). It also protects state officials in their

**CIVIL NO. 08-1446 (SEC)**                                                                                          Page 12

official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. Ford Motor v. Dept. of Treasury, 323 U.S. 459 (1945); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Hence, a claim against a state official in her official capacity for monetary relief is, in essence, a claim against the State.

That the Puerto Rico Police Department is an arm or alter ego of Puerto Rico has been established by this district on numerous occasions.[4] See Nieves-Cruz v. Comm. of P.R., 425 F. Supp. 2d 188, 192 (D.P.R. 2006); López-Rosario v. Police Dept., 126 F. Supp. 2d 167, 170-171 (D.P.R. 2000); Aguilar v. Comm. of P.R., 2006 WL 3000765 at *1; Suárez-Cestero v. Pagán-Rosa, 996 F. Supp. 133, 142-43 (D.P.R. 1998). As such, this Court need not dwell on this point.

Notwithstanding the above, herein Defendants were sued in their personal and individual capacities as well, and not just in their official capacities. As such, Defendants' request for dismissal of the claims against their personal capacity is **DENIED.** However, the Plaintiffs' claims against Defendants in their official capacity are **DISMISSED with prejudice**.

In regards to Defendants' claim (4) that they are entitled to qualified immunity and, therefore, that they are exempt from suit for money damages in their personal capacity, Defendants argue that they did not violate Misael's constitutional rights. This Court will now discuss what qualified immunity entails.

---

[4] The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or alter ego of the state and thus entitled to immunity under the Eleventh Amendment. Fresenius Med. Care, 322 F.3d at 65 (citing and discussing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. Id. at 65-69.

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: "(1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendant's action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings v. Jones, 499 F.3d 2, 11.

At this stage, this Court has concluded that Misael has pled a viable § 1983 cause of action against Defendants. Therefore, this Court cannot conclude that Misael has failed to allege that Defendants violated his constitutional rights. Moreover, according to the facts of the complaint, Galloza, Vázquez-Martínez, and Avilés should have understood that their actions or omissions constituted a violation of Co-plaintiff's constitutional rights. This Court finds that a reasonable official would not have believed that the acts committed by this trio of police officers were lawful, in light of clearly established law. Moreover, any reasonable police officer is aware that it is unlawful to use violence and excessive force when stopping and arresting an individual, especially when the Co-plaintiff did not show a suspicious behavior, carry drugs, illegal material or contraband items in his car, and only questioned officer Vázquez-Martínez about the search the latter was about to conduct in his vehicle. See Docket # 6, ¶ 3.8. At this point, this Court cannot conclude, without making factual determinations, that Galloza, Vázquez-Martínez, and Avilés acted

**CIVIL NO. 08-1446 (SEC)**                                                                                            Page 14

reasonably under the circumstances, and are entitled to qualified immunity. Therefore, their motion to dismiss on this ground is **DENIED.**

Finally, Defendants request that this Court dismiss the claims brought pursuant to its supplemental jurisdiction because dismissal of said claims is proper once all federal claims have been disposed of. However, since Plaintiffs' federal claims have not been dismissed, their request is **DENIED**.

Plaintiffs' First Amendment Claim

The First Amendment of the U.S. Constitution states that "Congress shall make no law respecting and establishment of religion, or prohibiting the free exercise of thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

The allegations in the complaint are totally devoid of any facts supporting any possible violation of this Amendment. There is not a single claim that Plaintiffs' right to freely exercise their religion, speech, right to assemble and to petition the Government for redress of grievances have been violated. Therefore, any contentions under the First Amendment are hereby **DISMISSED with prejudice**.

Plaintiffs' Fifth Amendment Claims

Defendants further move the Court to dismiss Plaintiffs' Fifth Amendment claims. The Fifth Amendment provides that "[n]o person shall [...] be deprived of life, liberty, or property, without due process of law [...]" U.S. CONST. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F. 2d 447, 449 (1st Cir. 1983). This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Martínez-Rivera v. Sánchez-Ramos, 498 F.

**CIVIL NO. 08-1446 (SEC)**                                                                                         Page 15

3d 3, 8 (affirming sua sponte a dismissal of Plaintiffs' claims under the Fifth Amendment because the police officers where state actors and not federal actors). Because Plaintiffs' complaint does not allege that any of the Defendants are federal actors, instead it avers that they acted under color of state law (see Docket # 6 ¶ 2.9, 2.10 and 2.11), their claims pursuant to the Fifth Amendment are hereby **DISMISSED with prejudice.**

Plaintiffs' Tenth Amendment Claims

The Tenth Amendment of the Constitution of the United States, states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the State respectively, or to the people." U.S. C<small>ONST</small>. amend. X.

The Tenth amendment of the Constitution of the United States clearly rends that the federal government acts on enumerated and limited powers, whereas state governments benefit from general powers. Evidently the Tenth Amendment is inapplicable to this claim, nullifying Plaintiffs' attempt to find a venue for § 1983. Therefore, any contentions under the Tenth Amendment are hereby **DISMISSED with prejudice**.

Plaintiffs' Fourteenth Amendment Claims

Plaintiffs also seek relief under the Fourteenth Amendment contending that, during Misael's seizure, Defendants used excessive force, and invaded his privacy. In opposition, Defendants argue that when a constitutional violation is covered by a particular statute, that specific provision must be applied, instead of the Fourteenth Amendment.

The Fourteenth Amendment mandates that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to establish the burden on a substantive due process cause of action, a plaintiff must "present a well-pleaded claim that a state actor deprived it of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." Estate of

**CIVIL NO. 08-1446 (SEC)**                                                                 Page 16

Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citing Clark, 514 F.3d at 112; see also Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006)) (stating that the "shock the conscience" standard implicates behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience") (citing County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998)). Only "[b]ehavior 'intended to injure in some way unjustifiable by any government interest' [...] is the sort of official action most likely to 'shock the conscience.'" Ramos-Piñero, 453 F.3d at 53 (citations omitted). Plaintiffs argue that they have shown that the Defendants engaged in "'conscience shocking' exercises of power" (see Docket # 17 ¶ 4.18) during the excessive beating he received.

Misael's substantive due process claim, premised on the deprivation of his liberty, fails insofar as his claim is really an excessive force claim that should be, and is, brought under the Fourth Amendment. Wainwright, 548 F.3d at 163. The Supreme Court has held that:

> all claims that law enforcement officers have used excessive force -deadly or not-in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Graham, 490 U.S. at 395.

As in the case of Misael, a "seizure" which entitles plaintiff to "the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, [...] in some way restrained the liberty of a citizen [...].'" Id., n.10 (citing Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968)).

Since an alternative constitutional claim is available in this case, Misael's substantive due process claims on this front cannot prevail. See Wainwright, 548 F.3d at 163. As such, Plaintiffs' claims under the Fourteenth Amendment are **DISMISSED with prejudice**.

**CIVIL NO. 08-1446 (SEC)**                                                                                       Page 17

The claims stemming from the First, Fifth, Tenth and Fourteenth Amendments, and the inclusion by Defendants of a Ninth Amendment claim in their motions to dismiss (see Docket # 9, p. 10 & Docket # 21, ¶ 3) are, respectively, unfounded and mistaken.[5] This Court reminds the parties that all representations to the court, submitted to the court through pleadings, motions, and any other document, are bound by FED. R. CIV. P. 11(b)'s mandate. Therefore, all claims, defenses, and other legal arguments that are unwarranted by existing law, are, in fact, frivolous, and can be sanctioned by the courts. In the present case, both Plaintiffs and Defendants have set forth unwarranted legal arguments, insofar as the current case law is extremely clear as to the applicable statutes in cases such as this one. The careless inclusion of numerous allegations and defenses is unjustified, and unnecessarily onerous for the courts. Therefore, the parties shall take the foregoing into consideration when appearing before this Court, or face the imposition of sanctions.

**Conclusion:**

In light of the above discussion, Toledo's motion to dismiss (Docket # 9) is **GRANTED**, and Vázquez-Martínez, Avilés, and Galloza's like motion (Docket # 21) is **GRANTED in part** and **DENIED in part**. Partial judgment will be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 16th day of June, 2009.

S/Salvador E. Casellas
Salvador E. Casellas
U.S. District Judge

---

[5] There is not a single instance in Plaintiffs' Complaint or the Opposition to Motion to Dismiss (Docket ## 6 & 17) that either states or suggests the inclusion of a Ninth Amendment relief.